# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                     No. CR 16-1613 JB

ANTHONY RAY BACA, a.k.a. "Pup,"
CHRISTOPHER GARCIA,
SERGIO LOYA RORDIGUEZ, a.k.a
"Churro,"
MANUEL BENITO, a.k.a. "Panther,"
VINCENT GARDUÑO a.k.a. "Fatal,"
MANDEL LON PARKER, a.k.a.
"Chuco,"
DANIEL ARCHULETA, a.k.a. "Smurf,"
DANIEL SANCHEZ, a.k.a. "Dan Dan,"
ANTHONY CORDOVA, a.k.a. "Antone,"
and ARTURO ARNULFO GARCIA,
a.k.a. "Shotgun,"

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Anthony Cordova's Opposed Motion in Limine to Exclude Evidence of Co-Defendants' Pleas of Guilty and Guilty Verdicts, filed May 14, 2018 (Doc. 617)("Motion"). The Court held a hearing on June 14, 2018. The primary issues are: (i) whether the Court should exclude as substantive evidence the guilty pleas of Defendant Anthony Cordova's co-Defendants; (ii) whether the Court should exclude as substantive evidence the guilty pleas in a related case, United States v. DeLeon, No. CR 15-4268; and (iii) whether the Court should order the United States to instruct its witnesses not to mention guilty pleas or verdicts in this case or in United States v. DeLeon. The Court concludes that: (i) it will exclude as substantive evidence Cordova's co-Defendants' guilty pleas; (ii) the Court will not exclude substantive evidence of United States v. DeLeon guilty pleas; and (iii) the

Court will not order the Plaintiff United States of America to instruct its witnesses to avoid mentioning the guilty pleas or verdicts without prompting, because, at the hearing, the United States agreed to so instruct its witnesses. Accordingly, the Court grants the request in part and denies it in part.

## FACTUAL BACKGROUND

The Court takes its background facts from the Superseding Indictment, filed March 9, 2017 (Doc. 372)("Indictment"). The Court does not set forth these facts as findings or for their truth. The Court recognizes that the factual background is largely the United States' version of events and that the Defendants are all presumed innocent.

This case deals with the crimes that the Syndicato de Nuevo Mexico ("SNM") allegedly committed through its members. See Indictment ¶¶ 1, 3, at 1-2. The SNM, through its members, operated in the District of New Mexico at all relevant times, and its members engaged in acts of violence and other criminal activities, "including, murder, kidnapping, attempted murder, conspiracy to manufacture/distribute narcotics, and firearms trafficking." Indictment ¶ 1, at 2. The SNM constitutes an enterprise "as defined in Title 18, United States Code, Sections 1959(b)(2) and 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected interstate and foreign commerce." Indictment ¶ 2, at 2. The enterprise is "an ongoing organization whose members/prospects/associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise." Indictment ¶ 2, at 2.

The SNM is a prison gang formed in the early 1980s at the Penitentiary of New Mexico ("PNM") after a violent prison riot at PNM during which inmates seriously assaulted and raped twelve correctional officers after taking them hostage. See Indictment ¶ 3, at 2. During the riot,

thirty-three inmates were killed, and over 200 were injured. <u>See</u> Indictment ¶ 3, at 2. After the PNM riot, the SNM expanded throughout the state's prison system and has had as many as 500 members. <u>See</u> Indictment ¶ 4, at 2. The SNM now has approximately 250 members, and "a 'panel' or 'mesa' (Spanish for table) of leaders who issue orders to subordinate gang members." Indictment ¶ 4, at 2-3. The SNM controls drug distribution and other illegal activities within the New Mexico penal system, but it also conveys orders outside the prison system. <u>See</u> Indictment ¶¶ 3, 5, at 2-3. Members who rejoin their communities after completing their sentences are expected to further the gang's goals, the main one being the control of and the profit from narcotics trafficking. <u>See</u> Indictment ¶ 5, at 3. Members who fail "to show continued loyalty to the gang" may be assaulted or murdered. Indictment at 4. The SNM also intimidates and influences smaller New Mexico Hispanic gangs to expand its illegal activities. <u>See</u> Indictment ¶ 6, at 3. If another gang does not abide by the SNM's demands, the SNM will assault or kill one of the other gang's members to show its power. <u>See</u> Indictment ¶ 6, at 3. The SNM's rivalry with other gangs also manifests itself in beatings and stabbings within the prison system. <u>See</u> Indictment ¶ 7, at 4. The SNM further engages in violence "to assert its gang identity, to claim or protect its territory, to challenge or respond to challenges, to retaliate against a rival gang or member, [and] to gain notoriety and show its superiority over others." Indictment ¶ 7, at 4. "Similarly, a member of the SNM Gang is expected to confront and attack any suspected law enforcement informants, cooperating witness[es], homosexuals, or sex offenders." Indictment ¶ 8, at 4. To achieve its purpose of maintaining power, the SNM uses intimidation, violence, threats of violence, assault, and murder. <u>See</u> Indictment ¶¶ 6-8, at 3-4. The SNM as an enterprise generates income by having its members and associates traffic controlled substances and extort narcotic traffickers. <u>See</u> Indictment ¶ 7, at 4. The SNM's recent activities in a

conspiracy to murder high-ranking New Mexico Corrections Department officials inspired the Federal Bureau of Investigation's ("FBI") present investigation. See United States v. Garcia, 221 F. Supp. 3d 1275, 1277 (D.N.M. 2016)(Browning, J.).

In December, 2015, the United States brought a criminal case against thirty-one Defendants, charging them with a total of sixteen counts. See United States v. DeLeon, No. CR 15-4268, Indictment at 1, 9-18, filed December 1, 2015 (Doc. 2)("DeLeon Indictment"). The United States accuses the Defendants of participating in the SNM enterprise's operation and management, and of committing unlawful activities "as a consideration for the receipt of, and as consideration for a promise and an agreement to pay, anything of pecuniary value from SNM and for the purpose of gaining entrance to and maintaining and increasing position in SNM, an enterprise engaged in racketeering activity." DeLeon Indictment at 9-18.

The Court bifurcated United States v. DeLeon into two trials. The first trial began on January 29, 2018, and involved four defendants: Anthony Ray Baca, Daniel Sanchez, Rudy Perez, and Carlos Herrera. The jury ultimately found Sanchez, Baca, and Herrera guilty of violating the Violent Crimes in Aid of Racketeering Activity, 18 U.S.C. § 1959 ("VICAR") in conspiring to murder Javier Molina and in murdering Molina. See United States v. DeLeon, No. CR 15-4268, Verdict at 1-2, filed March 12, 2018 (Doc. 1937)("DeLeon I Verdict"). The jury also found Baca guilty of violating VICAR in conspiring to murder Dwayne Santistevan and for violating VICAR in conspiring to murder Gregg Marcentel. See DeLeon I Verdict at 2. The jury found Perez not guilty of violating VICAR in conspiring to murder Molina and not guilty of violating VICAR in murdering Molina. See DeLeon I Verdict at 3.

The second United States v. DeLeon trial began on April 9, 2018, and involved seven defendants: Joe Lawrence Gallegos, Edward Troup, Billy Garcia, Allen Patterson, Christopher

Chavez, Arturo Arnulfo Garcia, and Andrew Gallegos. The jury ultimately found J. Gallegos guilty of violating VICAR in murdering Frank Castillo, violating VICAR in conspiring to murder Adrian Burns, and violating VICAR in murdering Burns. See United States v. DeLeon, No. CR 15-4268 Verdict at 1, filed May 25, 2018 (Doc. 2332)("DeLeon II Verdict"). The jury found Troup guilty of violating VICAR in murdering Frank Castillo and guilty of violating VICAR in murdering Freddie Sanchez. See DeLeon II Verdict at 3. The jury found Billy Garcia guilty of violating VICAR in murdering Castillo and guilty of violating VICAR in murdering Rolando Garza. See DeLeon II Verdict at 3. The jury found A. Garcia guilty of violating VICAR in murdering Rolando Garza and violating VICAR in murdering Freddie Sanchez. See DeLeon II Verdict at 4. The jury found A. Gallegos of violating VICAR in murdering Adrian Burns. See DeLeon II Verdict at 4-5.

## **PROCEDURAL BACKGROUND**

In the first United States v. DeLeon trial, the United States called Mario Montoya as a witness and asked him about the Dix murder at issue in this case. See United States v. DeLeon, CR No. 15-4268, Testimony Transcript at 52:21-53:15, filed April 3, 2018 (taken February 20, 2018)(Doc. 2034)("Feb. 20, 2018 DeLeon Tr.")(Castellano, Montoya). During Montoya's testimony, the following exchange occurred:

> CASTELLANO[1]: Until you came forward with the information about the [Dix] homicide, had anybody been charged with it?
>
> MONTOYA: No.
>
> CASTELLANO: And as a result of your cooperation, were Chris Garcia and Anthony Cordova charged with that murder?

---

[1]Castellano refers to Randy M. Castellano, one of the Assistant United States Attorneys representing the United States in this case.

MONTOYA:  I believe so.  I believe Chris pled guilty.  I don't know for sure.

CASTELLANO:  And is Anthony Cordova still pending trial?

MONTOYA:  I believe so.

Feb. 20, 2018 <u>DeLeon</u> Tr. at 53:4-15 (Castellano, Montoya).

The FBI's investigation into the SNM also led to this case.  In the Indictment, the United States charged ten Defendants.  <u>See</u> Indictment at 1.  The Court dismissed the charges against some Defendants.  <u>See</u> Stipulated Order of Dismissal at Order at 1, filed June 14, 2018 (Doc. 727)(dismissing the charges against Defendant Anthony Ray Baca, Defendant Daniel Sanchez, and Defendant Arturo Arnulfo Garcia without prejudice); Order Dismissing Richard Gallegos Without Prejudice, filed January 30, 2017 (Doc. 317)(granting the United States' Motion to Dismiss Richard Gallegos Without Prejudice, filed November 22, 2016 (Doc. 260)). Other Defendants made plea agreements with the United States.  <u>See</u> Plea Agreement, filed June 21, 2018 (Doc. 740)(Vincent Garduno); Plea Agreement, filed June 14, 2018 (Doc. 726)(Sergio Loya Rodriguez); Plea Agreement, filed June 13, 2018 (Doc. 720)(Manuel Benito); Plea Agreement, filed June 7, 2018 (Doc. 700)(Mandel Lon Parker); Plea Agreement, filed June 7, 2018 (Doc. 698)(Daniel Archuleta); Plea Agreement, filed January 25, 2018 (Doc. 503)(Christopher Garcia); Plea Agreement, filed March 1, 2017 (Doc. 368)(Manuel Jacob Armijo); Plea Agreement, filed September 22, 2016 (Doc. 229)(Frederico Munoz).  Cordova is the only Defendant still facing charges in this case.  Specifically, the Indictment alleges that Cordova violated VICAR by murdering Dix and with violating 18 U.S.C. § 924(c), (j)(1), respectively, using a firearm during a violent crime and using a firearm to cause a person's death, during that murder.  <u>See</u> Indictment at 53-54.

1.    **The Motion.**

In the Motion, Cordova asks the Court to "exclude evidence of any guilty plea and guilty verdict in this case or in" United States v. DeLeon. Motion at 1. Cordova contends that, in United States v. DeLeon, the United States asked one of its witnesses -- an informant named Mario Montoya -- whether, as a result of Montoya's cooperation with law enforcement, Chris Garcia and Cordova were charged with murder, and Montoya responded: "I believe so. I believe Chris pled guilty. I don't know that for sure." Motion at 1 (quoting Feb. 20, 2018 DeLeon Tr. at 53:8-15)(Castellano, Montoya). According to Cordova, Montoya's statement that C. Garcia pleaded guilty was inadmissible. See Motion at 3 (citing United States v. Baez, 703 F.3d 453, 454-56 (10th Cir. 1983)(holding that the trial court erred when it informed jurors that the defendant's co-indictees had pleaded guilty)). Cordova requests that the Court grant the Motion, and "exclude any reference to or evidence of a guilty plea by a government witness or a non-testifying co-defendant." Motion at 3.

2.    **The Response.**

The United States responds. See United States' Response to Defendants' Motion in Limine [Doc. 617], filed May 29, 2018 (Doc. 657)("Response"). The United States contends that the Court should admit plea agreements for the limited purpose of helping the jury evaluate a testifying cooperator's credibility, see Response at 1 (citing United States v. Vigil, CR No. 05-2051, 2006 WL 4109684, at *5 (D.N.M. Aug. 14, 2006)(Browning, J.)), or to help refresh a witness' recollection, see Response at 1. The United States asserts that the Court, in United States v. DeLeon, ruled that plea agreements of testifying co-defendants would be admissible with redactions and advised the parties to approach the bench during trial if a party wished for a redacted portion to become admissible. See Response at 2-3 (citing United States v. DeLeon

Hearing Transcript at 259:2-272:3 (December 18, 2017), filed January 2, 2018 (Doc. 1600) (Court, Castle, Castellano, Benjamin, Sirignano, Beck)). In United States v. DeLeon, the Court and parties agreed to admit the plea agreements with the following statements redacted, with "the understanding that [the statements] may come in for other purposes, if the Government lays some foundation," United States v. DeLeon, CR 15-4268 JB, Draft Transcript of Hearing at 270:21-24 (taken December 18, 2017), (Court)("DeLeon Hearing Tr.")[2], such as:

- "[T]he defendants clearly demonstrate the recognition of affirmative acceptance of personal responsibilities for the defendant's criminal conduct." Tr. at 262:10-13 (Castle).

- The paragraphs discussing "the Court's role in accepting or not accepting the plea agreement." Tr. at 263:14-15 (Castle).

- The attorney's attestation and signature block. See Tr. at 264:19-265:8 (Castle).

- "The defendant stipulates that he does not possess any exculpatory information regarding any of his charged co-defendants." Tr. at 266:14-17 (Duncan).

The United States is "not opposed to the same ruling" here. Response at 2. The United States further contends that it did not solicit Montoya's testimony regarding C. Garcia's plea, and, in this case, it "doesn't intend to elicit guilty pleas from its cooperators as evidence of the Defendants' guilt." Response at 2.

   3.   **The Reply.**

Cordova replied to the Response. See Reply to Government's Response to Anthony Cordova's Motion in Limine to Exclude Evidence of Co-Defendants' Pleas of Guilty and Guilty

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Verdicts, filed June 5, 2018 (Doc. 688)("Reply"). In the Reply, Cordova recognizes that, although plea agreements may not be substantive evidence, plea agreements may be admissible to impeach a witness' credibility. See Reply at 1. Cordova asserts, however, that his Motion's "gravamen" is that "a witness such as Mario Montoya who is not charged as co-conspirator and has not entered a plea of guilty, ought not be allowed to inform the jury that defendants he implicates have either been found guilty or pled guilty." Reply at 2. Cordova contends that, once a "witness' proclivity for narrative, unresponsive answers is known," the United States must "take measures to ensure that the witness[es] answer the questions put to them, without volunteering facts or engaging in rambling narratives." Reply at 2.

4. **The Hearing.**

At the hearing, Cordova expressed his concern that Montoya -- who is not a co-Defendant -- might again improperly testify about co-Defendants' plea agreements. See Transcript of Hearing at 262:6-17 (taken June 14, 2018), filed July 3, 2018 (Doc. 772)(Morrissey)("Tr."). Cordova argued that the United States should "make some attempt to reign . . . in" Montoya, possibly by "telling him what isn't permitted in testimony." Tr. at 262:6-12 (Morrissey). Cordova clarified that he is not seeking a general exclusion of all co-Defendants' guilty pleas. See Tr. at 262:18-263:2 (Court, Morrissey). Cordova explained that he is concerned about Montoya and any other witness who is not charged in this case who might testify about the Defendants' plea deals. See Tr. at 262:22-263:2 (Morrissey). Cordova clarified that he was concerned about a witness mentioning guilty verdicts relating specifically to United States v. DeLeon and not to all convictions. See Tr. at 265:17-266:5 (Court, Morrissey).

The United States stated that it can instruct Montoya and other witnesses before they testify about not saying anything about co-Defendants' plea deals. See Tr. at 263:16-17 (Beck);

id. at 266:10-12 (Court, Beck). The United States suggested that it could avoid the risk by leading witnesses through certain topics. See Tr. at 264:1-10 (Beck).

The Court asked the United States whether "there was any reason why" it would want to bring out evidence of the United States v. DeLeon Defendants' guilty pleas, and the United States answered: "No." Tr. at 266:6-9 (Court, Beck). The Court asked the United States to "caution all your witnesses not to bring that out," and the United States answered: "Yes." Tr. at 266:10-12 (Court, Beck).

## LAW REGARDING CO-DEFENDANTS' GUILTY PLEAS' ADMISSIBILITY

"A codefendant's guilty plea may not be used as substantive evidence of a defendant's guilt." United States v. Baez, 703 F.2d at 455. See United States v. Jones, 468 F.3d 704, 709 (10th Cir. 2006)("In any trial with multiple defendants, it is imperative that a co-defendant's guilty plea not be used as substantive evidence of a defendant's guilt."). This rule protects defendants from a jury's temptation "to conclude that if one defendant is guilty of committing an offense, the other defendant is guilty as well." United States v. Peterman, 841 F.2d 1474, 1480 (10th Cir. 1988). See United States v. Miranda, 593 F.2d 590, 594 (5th Cir. 1979)("Our cases clearly establish that a defendant is entitled to have the question of his guilt determined upon the evidence against him, not on whether a codefendant or government witness has been convicted of the same charge."); Babb v. United States, 218 F.2d 538, 542 (5th Cir. 1955)("A defendant is entitled to have the question of his guilt determined upon the evidence against him, not on whether a Government witness or co-defendant has plead [sic] guilty to the same charge."). The United States Court of Appeals for the Tenth Circuit has noted that "[a] guilty plea entered by a codefendant can be especially prejudicial if the plea is made in connection with a conspiracy to which the remaining defendants are charged." United States v. Peterman, 841 F.2d at 1480

(internal quotation marks omitted)(quoting United States v. DeLucca, 630 F.2d 294, 298 (5th Cir. 1980)). "Due to the extreme and unfair prejudice suffered by defendants in [those] situations, courts and prosecutors generally are forbidden from mentioning that a codefendant has either pled guilty or been convicted." United States v. Griffin, 778 F.2d 707, 710 (11th Cir. 1985).

Evidence of a co-conspirator's guilty plea is admissible only for the limited purpose of assisting the jury in assessing the credibility of a witness. See United States v. Nickl, 427 F.3d 1286, 1294 n.2 (10th Cir. 2005)("A prosecutor may properly use a codefendant or conconspirator's guilty plea to aid the jury in its assessment of the codefendant or conspirator's credibility, but may not use the guilty plea as substantive evidence of a defendant's guilt."). When a plea is admissible, the United States is entitled to introduce into evidence the full contents of the plea agreement of a cooperating witness during the witness' direct testimony. See United States v. Harlow, 444 F.3d 1255, 1262 (10th Cir. 2006); United States v. Magallanez, 408 F.3d 672, 680 (10th Cir. 2005); United States v. Lord, 907 F.2d 1028, 1031(10th Cir. 1990). This rule applies even if the plea agreement contains a truthfulness provision or a cooperation agreement. See United States v. Harlow, 444 F.3d at 1262.

The Tenth Circuit has recognized that a plea agreement containing a truthfulness provision or a cooperation agreement has both a bolstering and an impeaching effect on the witness' credibility, and acknowledged "the difficulties . . . drawing fine distinctions between which provisions of an agreement are bolstering and which are impeaching." United States v. Lord, 907 F.2d at 1031. In light of this difficulty, the majority of the Courts of Appeals, including the Tenth Circuit, recognize the impracticality of limiting the admissible portions of a plea agreement during the witness' direct examination to the impeaching parts alone and permit

the full contents of the plea agreement to be used in the course of the direct examination of the witness.[3]  See United States v. Spriggs, 996 F.2d 320, 324 (D.C. Cir. 1993)(citing cases from the United States Courts of Appeals First, Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Tenth Circuits).  More specifically, prosecutors are entitled to use the contents of witness plea agreements in their entirety, including provisions related to truthfulness that might serve to bolster credibility, and such uses "become impermissible vouching only when the prosecutors explicitly or implicitly indicate that they can monitor and accurately verify the truthfulness of the witness' testimony." United States v. Harlow, 444 F.3d at 1262 (quoting United States v. Bowie, 892 F.2d 1494, 1498 (10th Cir. 1990)).  See United States v. Magallanez, 408 F.3d at 680 (same).

The trial court should instruct the jury that the evidence of a witness' guilty plea is received for the limited purpose of determining witness credibility and is not to be considered as implying the defendant's guilt.  See United States v. Peterman, 841 F.2d at 1481; United States v. Baez, 703 F.2d at 455.  "Because of the potential for prejudice, cautionary instructions limiting the jury's use of the guilty plea to permissible purposes are critical." United States v. Baez, 703 F.2d at 455 (citations omitted).  These general rules apply to the plea agreements of co-conspirators as well as to those of co-defendants.  See United States v. Griffin, 778 F.2d at

---

[3]That the full contents of a plea agreement may come in on direct does not mean that the prosecution may offer any of that content for the purposes of establishing the defendant's substantive guilt; the admission of such evidence is always limited to impeaching the credibility of a witness.  To ensure that evidence is offered for the proper purpose, the Court is empowered to examine the purpose of the government in calling a co-defendant.  See United States v. Peterman, 841 F.2d at 1479 ("In evaluating the reason a witness is called, we adopt the rule of the Fifth Circuit that the prosecution may not introduce evidence 'under the guise of impeachment for the primary purpose of placing before the jury substantive evidence which is not otherwise admissible.'" (emphasis in original)(quoting United States v. Hogan, 763 F.2d 697, 702 (5th Cir. 1985)).

711 (reasoning that the prejudice against the defendant is the same irrespective whether the evidence presented by the government involves codefendants or coconspirators).

Some courts doubt the effectiveness and sufficiency of a limiting instruction in cases involving conspiracy. See United States v. Gullo, 502 F.2d 759, 761 (3d Cir. 1974). This fear arises because the character of conspiracy as a crime that requires the participation of multiple individuals elevates the risk that a jury will implicate the defendant in the crime of the alleged coconspirator and "thus presents a unique situation which may require the courts to scrutinize more closely the purported remedial effect of instructions to the jury." United States v. Gullo, 502 F.2d at 761.

In any case, it is preferable to caution the jury after each alleged co-conspirator or co-defendant testifies. See United States v. Dunn, 841 F.2d 1026, 1031 (10th Cir. 1988). Putting evidence of co-defendants' convictions before the jury in the absence of a permissible purpose or without a cautionary instruction limiting the jury's consideration to a permissible purpose may constitute plain error affecting substantial rights under rule 52(b) of the Federal Rules of Criminal Procedure. See United States v. Austin, 786 F.2d 986, 992 (10th Cir. 1986)(citing United States v. Baez, 703 F.2d at 455). But see United States v. Davis, 766 F.2d 1452, 1456-57 (10th Cir. 1985)(holding failure to give a cautionary instruction was not per se plain error and did not require reversal of conviction when the defendant had made use of his co-defendants' pleas for impeachment purposes and there was overwhelming evidence of guilt in the record).

The Tenth Circuit has recognized that it is improper for the prosecution to use guilty pleas of co-conspirators or co-defendants to perpetuate a "birds of the feather" argument. See United States v. Dunn, 841 F.2d at 1031 (recognizing the need to temper the "birds of a feather" tactic used by prosecution even when defense counsel did not explicitly object to such a tactic);

United States v. Austin, 786 F.2d at 991 ("In the face of such blatantly impermissible use of these convictions, we reject out of hand the Government's argument on appeal that the convictions were not used as substantive evidence of defendants' guilt."). This recognition adopts the understanding of other Court of Appeals that "the government cannot prove a conspiracy by presenting evidence that only places the defendant in a climate of activity that reeks of something foul." United States v. Austin, 786 F.2d at 988 (quoting United States v. Jackson, 700 F.2d 181, 185 (5th Cir. 1983)(internal quotation omitted)).

In Krulewitch v. United States, 336 U.S. 440 (1949), the Honorable Robert Jackson, Justice of the Supreme Court of the United States, in a concurring opinion, noted the particularly sensitive position of a defendant to a conspiracy charge:

> A co-defendant in a conspiracy trial occupies an uneasy seat. There generally will be evidence of wrongdoing by somebody. It is difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather are flocked together. If he is silent, he is taken to admit it and if, as often happens, co-defendants can be prodded into accusing or contradicting each other, they convict each other.

Krulewitch v. United States, 336 U.S. at 454 (Jackson, J., concurring). Because an association of multiple parties is an element of a conspiracy charge, "courts must be especially vigilant to ensure the defendants are not convicted on the theory that guilty 'birds of a feather are flocked together.'" United States v. Griffin, 778 F.2d at 711 (citing Krulewitch v. United States, 336 U.S. at 454 (Jackson, J., concurring)). "The impact on the jury [of the government bringing out the guilty plea of a co-offender] is quite substantial: the obvious inference is that if one of several persons alleged to be co-offenders pleads guilty and exposes himself to imprisonment, he must have been telling the truth, and if one is guilty, all are guilty." United States v. Kroh, 915 F.2d

326, 338 n.3 (8th Cir. 1990)(quoting 2 J. Weinstein & M. Berger, <u>Evidence</u> § 410[07], at 410-449 (1988)).

## <u>LAW REGARDING RULE 403</u>

Under rule 403 of the Federal Rules of Evidence, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice. <u>See United States v. Record</u>, 873 F.2d 1363, 1375 (10th Cir. 1989). "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." <u>United States v. Pettigrew</u>, 468 F.3d 626, 638 (10th Cir. 2006)(quoting <u>United States v. Sides</u>, 944 F.2d 1554, 1563 (10th Cir. 1991)). The Tenth Circuit has admonished district courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." <u>United States v. Smalls</u>, 605 F.3d 765, 787 (10th Cir. 2010)

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, <u>see United States v. Lugo</u>, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, <u>see United States v. Bice-Bey</u>, 701 F.2d 1086, 1089 (4th Cir. 1983); <u>United States v. Masters</u>, 622 F.2d 83, 87-88 (4th Cir. 1980). The Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . . This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence

that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 Steven Alan Childress & Martha S. Davis, Federal Standards of Review § 4.02, at 4-16 (3d ed. 1999)). See United States v. Abel, 469 U.S. 45, 54 (1984)("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . .").

Evidence may be unfairly prejudicial if it would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter. See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999). Evidence is not unfairly prejudicial merely because it damages a party's case. See United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008); United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991). Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note).

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180 (1997). "Such improper grounds certainly include . . . generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged." Old Chief v. United States, 519 U.S. at 180-81. In light of rule 404(b)'s prohibition regarding the use of character evidence to show that a person acted in conformity with their character, "[t]here is, accordingly, no question that propensity would be an 'improper basis' for conviction

and that evidence . . . is subject to analysis under Rule 403 for relative probative value and for prejudicial misuse as propensity evidence." Old Chief v. United States, 519 U.S. at 182.

## ANALYSIS

Cordova's requested relief on this Motion has been -- somewhat understandably -- a moving target. In the Motion, Cordova asks that the Court "exclude evidence of any guilty plea and guilty verdict in this case or in case No. 15-CR-4268 JB," Motion at 1, and to "exclude any reference to or evidence of a guilty plea by government witness or a non-testifying co-defendant," Motion at 3. At the hearing, Cordova focused his request on preventing Montoya "or any similarly situated witness who is not a defendant in this case," Tr. at 262:18-263:2 (Court, Morrissey), from testifying about guilty pleas in United States v. DeLeon, see Tr. at 265:17-266:5 (Court, Morrissey), and asked that the United States "take measures to ensure that the witness answer the questions put to them, without volunteering facts or engaging in rambling narratives." Reply at 2. Despite Cordova's well-meaning attempt to narrow the issues, the Court will consider each in turn.

## I. THE COURT WILL EXCLUDE EVIDENCE OF THE GUILTY PLEAS OF CORDOVA'S CO-DEFENDANTS' AS SUBSTANTIVE EVIDENCE.

To the extent Cordova asks the Court "to exclude evidence of any guilty plea . . . in this case," Motion at 1, the Court will exclude them as substantive evidence. In the Tenth Circuit, "[a] codefendant's guilty plea may not be used as substantive evidence of a defendant's guilt." United States v. Baez, 703 F.2d at 455. See United States v. Jones, 468 F.3d at 709 ("In any trial with multiple defendants, it is imperative that a co-defendant's guilty plea not be used as substantive evidence of a defendant's guilt."). This rule protects defendants from a jury's temptation "to conclude that if one defendant is guilty of committing an offense, the other

defendant is guilty as well." United States v. Peterman, 841 F.2d at 1480. In this case, nine

Defendants have entered plea agreements. See Plea Agreement, filed June 21, 2018 (Doc. 740)

(Vincent Garduno); Plea Agreement, filed June 14, 2018 (Doc. 726)(Sergio Loya Rodriguez);

Plea Agreement, filed June 13, 2018 (Doc. 720)(Manuel Benito); Plea Agreement, filed June 7,

2018 (Doc. 700)(Mandel Lon Parker); Plea Agreement, filed June 7, 2018 (Doc. 698)(Daniel

Archuleta); Plea Agreement, filed January 25, 2018 (Doc. 503)(Chris Garcia); Plea Agreement,

filed March 1, 2017 (Doc. 368)(Manuel Jacob Armijo); Plea Agreement, filed September 22,

2016 (Doc. 229)(Frederico Munoz). Under United States v. Baez, evidence of those guilty pleas

is not admissible as substantive evidence. The Court will not permit them to be entered as

substantive evidence,[4] and the Court notes that the United States has agreed to instruct its

witnesses with knowledge of those plea agreements not to mention them. See Tr. at 263:16-17

(Beck); id. at 266:10-12 (Court, Beck).

## II.    THE COURT WILL NOT EXCLUDE IN LIMINE EVIDENCE OF UNITED STATES V. DELEON GUILTY PLEAS.

To the extent that Cordova asks the Court to "exclude evidence of any guilty plea and

guilty verdict . . . in [United States v. DeLeon] case No. 15-CR-4268 JB," Motion at 1; the Court

undertakes a different analysis. United States v. Baez does not apply to that request, because

United States v. Baez is limited to evidence of co-defendants' plea deals, and not to defendants'

guilty pleas in related cases. One FBI investigation into the SNM led to multiple cases,

including United States v. DeLeon and this case. That the two cases have a common backstory

---

[4]Evidence of co-Defendants' plea agreements is, of course, admissible for non-substantive purposes, such as for impeaching a witness' credibility. See United States v. Nickl, 427 F.3d at 1294 n.2 ("A prosecutor may properly use a codefendant or conconspirator's guilty plea to aid the jury in its assessment of the codefendant or conspirator's credibility, but may not use the guilty plea as substantive evidence of a defendant's guilt.").

does not, however, mean that guilty pleas in one case are prohibited, under United States v. Baez principles, from being admitted as substantive evidence into another. That limitation makes sense, because the concern is that evidence of a co-Defendant's guilty plea may lead a jury "to conclude that if one defendant is guilty of committing an offense, the other defendant is guilty as well," United States v. Peterman, 841 F.2d at 1480, and that concern does not apply when the guilty pleas relate to different crimes.

The connection between United States v. DeLeon and this case factors into the Court's rule 403 of the Federal Rules of Evidence analysis, however, if the United States seeks to submit evidence of those United States v. DeLeon guilty pleas or verdicts as substantive evidence in this case. The risk of unfair prejudice will substantially outweigh the evidence's probative value, but the Court will cross that bridge if and when it comes to it, because the Defendants may want to impeach the United States v. DeLeon Defendants who are testifying against Cordova. The Court notes that the United States asserts that it has no reason to bring out evidence of the United States v. DeLeon Defendants' guilty pleas, see Tr. at 266:6-9 (Court, Beck), and asserts that it will caution its witnesses not to mention those guilty pleas on their own, see Tr. at 266:10-12 (Court, Beck). Thus, it is the Defendant who wants to destroy these witnesses' credibility. Cordova wants to use these criminal backgrounds and promises of leniency to damage the United States v. DeLeon Defendants' credibility. Every SNM Defendant in United States v. DeLeon thought that the best strategy was to trash the cooperators' credibility by revealing such criminal history and plea agreements. The strategy has resulted in three complete acquittals and other acquittals on some charges. All in all, the strategy is a prudent, successful strategy. Cordova indicated that he intends to use the same strategy at trial. If Cordova is going to rip the Defendants with their criminal history and plea agreements, as he states, there is no sound reason to prevent the United

States from discussing the same in its direct examinations.  For the performing prosecutor, it is "conditioning" and "bringing out the bad facts."

## III.  THE COURT WILL NOT ORDER THE UNITED STATES TO PREVENT ITS WITNESSES FROM DISCUSSING GUILTY PLEAS AND VERDICTS, BECAUSE THE UNITED STATES AGREED TO NOT ELICIT THAT TESTIMONY AND TO INSTRUCT ITS WITNESSES BEFOREHAND NOT TO MENTION THE GUILTY PLEAS ON THEIR OWN.

In the end, Cordova's main concern is that garrulous witnesses like Montoya may, without the United States' prompting, offer evidence of other Defendants' guilty pleas or verdicts that the United States does not intend to bring out and that might not be admissible under United States v. Baez or rule 403.  See Reply at 2 (asserting that the Motion's "gravamen" is that "a witness such as Mario Montoya . . . ought not be allowed to inform the jury that defendants he implicates have either been found guilty or pled guilty"); id. at 2 (stating that the United States should "take measures to ensure that the witness answer the questions put to them, without volunteering facts or engaging in rambling narratives.").  To the extent that Cordova asks the Court to order that the United States takes affirmative steps to prevent its witnesses from blurting out such information without prompting, the Court grants that request, because the United States has agreed to instruct its witnesses not to raise those topics, see Tr. at 263:16-17 (Beck); id. at 266:10-12 (Court, Beck), and has offered to lead witnesses through testimony where the blurting risk is high, see Tr. at 264:1-10 (Beck).

**IT IS ORDERED** that Defendant Anthony Cordova's Opposed Motion in Limine to Exclude Evidence of Co-Defendants' Pleas of Guilty and Guilty Verdicts, filed May 14, 2018 (Doc. 617), is granted in part and denied in part.  The Court excludes Cordova's co-Defendants' guilty pleas as substantive evidence, but does not exclude in limine substantive evidence of United States v. DeLeon guilty pleas.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred Federici
  Attorney for the United States
    Acting Under Authority Conferred by 28 U.S.C. § 515
Albuquerque, New Mexico

--and--

Maria Ysabel Armijo
Randy M. Castellano
Matthew Beck
  Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

*Attorneys for the Plaintiff*

Theresa M. Duncan
Duncan, Earnest, LLC
Albuquerque, New Mexico

--and--

Marc M. Lowry
Rothstein Donatelli, LLP
Albuquerque, New Mexico

*Attorneys for Defendant Anthony Ray Baca*

Christopher W. Adams
Charleston, South Carolina

--and--

Amy Sirignano
Law Office of Amy Sirignano, P.C.
Albuquerque, New Mexico

*Attorneys for Defendant Christopher Garcia*

Todd Bruce Hotchkiss
Todd B. Hotchkiss, Attorney at Law, LLC
Albuquerque, New Mexico

    *Attorney for Defendant Manuel Jacob Armijo*

Louis E. Lopez, Jr.
El Paso, Texas

    *Attorney for Defendant Frederico Munoz*

Donald F. Kochersberger, III
Business Law Southwest, LLC
Albuquerque, New Mexico

    *Attorney for Defendant Sergio Loya Rodriguez*

Susan Burgess-Farrell
Barry G. Porter
Burges & Porter Law, LLC
Albuquerque, New Mexico

    *Attorneys for Defendant Manuel Benito*

Diego R. Esquibel
The Barnett Law Firm
Albuquerque, New Mexico

--and--

R. Scott Reisch
Reisch Law Firm, LLC
Denver, Colorado

    *Attorneys for Defendant Vincent Garduno*

Marc Grano
Grano Law Offices
Las Vegas, New Mexico

     *Attorney for Defendant Mandel Lon Parker*

James Baiamonte
Albuquerque, New Mexico

--and--

Ahmad Assed
Ahmad Assed & Associates
Albuquerque, New Mexico

     *Attorneys for Defendant Daniel Archuleta*

Lauren Noriega
The Noriega Law Firm
Los Angeles, California

--and--

Amy E. Jacks
Law Office of Amy E. Jacks
Los Angeles, California

     *Attorneys for Defendant Daniel Sanchez*

Marcia A. Morrissey
Santa Monica, California

--and--

Gregory M. Acton
Albuquerque, New Mexico

     *Attorneys for Defendant Anthony Cordova*

Scott Moran Davidson
Albuquerque, New Mexico

--and--

Laura E. Udall
Cooper & Udall, PC
Tucson, Arizona

--and--

Billy R. Blackburn
Albuquerque, New Mexico

*Attorneys for Defendant Arturo Arnulfo Garcia*